UNITED STATES, Appellee

v.

John R. LYNCH, Lieutenant Commander
U.S. Coast Guard, Appellant.

No. 68,509.
CMR No. 001–69–91.

U.S. Court of Military Appeals.

Argued Nov. 9, 1993.
Decided May 31, 1994.

For Appellant: *G Arthur Robbins* (argued); *Kevin J. Barry* and *Lieutenant Commander Allen Lotz* (on brief).

For Appellee: *Lieutenant Garland M. Walker* (argued).

*Opinion of the Court*

SULLIVAN, Chief Judge:

During the fall of 1990, appellant was tried by a general court-martial with members. This court-martial was convened by the Commander, Coast Guard Atlantic Area, and it took place at Governors Island, New York. Contrary to his pleas, appellant was found guilty of negligently hazarding a vessel, in violation of Article 110, Uniform Code of Military Justice, 10 USC § 910. On October 5, 1990, he was sentenced to a reprimand and reduction in lineal position by 150 numbers. The convening authority approved this sentence on February 13, 1991.

Appellant's sentence, as adjudged and approved, was below the statutory minimum for required review by a Court of Military Review. Art. 66(b), UCMJ, 10 USC § 866(b). Nevertheless, the General Counsel, Department of Transportation, in his capacity as Judge Advocate General of the Coast Guard, referred appellant's case to the Coast Guard Court of Military Review pursuant to his authority under Article 69(d), UCMJ, 10 USC § 869(d). That Court affirmed the findings of guilty and the sentence on July 21, 1992. 35 MJ 579.

Appellant petitioned this Court for review on September 18, 1992. Art. 67(a)(3), UCMJ, 10 USC § 867(a)(3)(1989). This petition was granted on January 26, 1993, on the following six issues:[1]

---

1. The statement of the issues granted is taken verbatim from the supplement, unless modified in the order granting review or specified by the Court.

### I

WHETHER THE COURT OF MILITARY REVIEW ABANDONED ITS RESPONSIBILITY TO SUPERVISE THE ADMINISTRATION OF MILITARY JUSTICE BY FAILING TO ADEQUATELY ADDRESS UNLAWFUL GOVERNMENT INTERFERENCE WITH APPELLANT'S POST–TRIAL REPRESENTATION.

### II

WHETHER THE ASSIGNMENT OF MILITARY APPELLATE JUDGES TO SERVE ON THE COAST GUARD COURT OF MILITARY REVIEW AS A MERE COLLATERAL DUTY COMPLIES WITH THE DUE PROCESS REQUIREMENTS OF ARTICLE 66, UCMJ.

### III

WHETHER STAFF JUDGE ADVOCATE CONFLICT OF INTEREST MANDATES SETTING ASIDE THE ACTION OF THE CONVENING AUTHORITY.

### IV

WHETHER THE DECISION OF THE STAFF JUDGE ADVOCATE TO DETAIL HIS SUBORDINATE STAFF ATTORNEY TO REPRESENT APPELLANT RESULTED IN THE DENIAL OF APPELLANT'S RIGHT TO CONFLICT–FREE MILITARY COUNSEL.

### V

WHETHER APPELLANT WAS PROSECUTED AND CONVICTED AS A RESULT OF UNLAWFUL COMMAND INFLUENCE BY THE COMMANDANT OF THE COAST GUARD.

### VI

WHETHER THE GENERAL COURT–MARTIAL MILITARY JUDGE AND THE JUDGES OF THE COURT OF MILITARY REVIEW WERE APPOINTED IN VIOLATION OF THE APPOINTMENTS CLAUSE OF THE CONSTITUTION.

No briefs were ordered on Issues II and VI, and oral argument was held on November 9, 1993, regarding the other issues.

Turning first to Issue III, the following facts are pertinent: On January 4, 1991, Captain Reining, the staff judge advocate (SJA) to the convening authority, made the following comments in his post-trial recommendation in appellant's case:

\* \* \*

5. As provided by RCM 1106, [Manual for Courts–Martial, United States, 1984,] the record of trial was not examined for legal errors. No allegations of legal error have been submitted by LCDR [Lieutenant Commander] Lynch or his counsel, as allowed by RCM 1105. LCDR Tagg, his detailed defense counsel, plans on submitting several issues to you for your consideration in an RCM 1105 brief.

6. However, an issue has been raised by one of LCDR Lynch's civilian defense counsels in petitions for extraordinary relief filed with the Coast Guard Court of Military Review and United States Court of Military Appeals. This issue is:

"PETITIONER WAS DEPRIVED, AND IS CONTINUING TO BE DEPRIVED, OF THE RIGHT TO COUNSEL AS GUARANTEED BY ARTICLE 27 OF THE UNIFORM CODE OF MILITARY JUSTICE AND THE SIXTH AMENDMENT TO THE CONSTITUTION."

a. *Following is a brief summary of the factual background* on the detailing of LCDR Tagg as LCDR Lynch's detailed defense counsel:

(1) As Chief, Advocacy Branch, LCDR Tagg, using "by direction" authority, detailed counsels for individuals who were facing courts-martial or were parties to administrative investigations, including administrative discharge boards. Prior to the start of the formal investigation into the sinking of USCGC MESQUITE, LCDR Tagg had less than 48 hours notice

to locate counsels for three named parties and have the detailed counsels on scene in Michigan for the start of the investigation. Due to the time pressures and relative seniority of the parties, he detailed himself to represent LCDR Lynch.

(2) After the conclusion of investigation, when general court-martial action appeared likely, LCDR Tagg and I discussed how counsel would be provided for LCDR Lynch.

(3) In this case, since LCDR Tagg and LCDR Lynch had an ongoing attorney/client relationship, a decision was made not to disturb that relationship. (Generally, the Government cannot terminate an ongoing attorney/client relationship related to a specific matter. If a new attorney had been named, LCDR Lynch would have had the right to request that LCDR Tagg be detailed as his individual military counsel.)

(4) *The potential conflicts of interest were thoroughly discussed, and I directed LCDR Tagg to make LCDR Lynch aware of the potential conflicts to determine whether LCDR Lynch wanted a different, conflict-free counsel detailed. I was assured by LCDR Tagg that LCDR Lynch was so advised.*

(5) It is, and was at the time, the MLCLANT Legal Division's policy not to detail a lawyer from the Advocacy Branch to a proceeding in which the Commander, LANTAREA, or Commander, MLCLANT, is the convening authority. As Chief, MLCLANT Legal Division, I am the staff judge advocate for both commanders, and I am the reporting officer for the defense counsels from the Advocacy Branch. The Chief, Advocacy Branch in such situations normally seeks counsels from other Coast Guard legal office[s].

(6) This Division's policy is not consistent with the long-standing Coast Guard tradition of having detailed defense counsel come from the staff of the General Court-Martial Convening Authority's staff judge advocate.

(7) The MLCLANT Legal Division's policy is based on my view that detailing counsel from the staff judge advocate's staff puts both the defense counsel and the staff judge advocate in an ethical dilemma. Since the staff judge advocate provides legal advice to the convening authority, any challenge to the convening authority's action probably entails calling into question the advice given by the detailed defense counsel's reporting senior. In such situations there is always a danger that a counsel may be less than zealous for fear of offending the staff judge advocate. Likewise, there is always a danger that the staff judge advocate will settle the score with an advocate who is considered over zealous. While the former conduct would be unethical and the latter a violation of RCM 104(b)(1), such a situation puts an enormous burden on both lawyers and should be avoided.

b. Following is a brief analysis of the issues involved in the petitions from my perspective:

(1) Under Article 27, UCMJ, and the Sixth Amendment of the Constitution, LCDR Lynch is entitled to the effective assistance of counsel. The defense is complaining that because of potential conflicts of interest between LCDR Tagg and myself, LCDR Lynch has been and is being denied the effective assistance of counsel.

\* \* \*

(3) If LCDR Lynch is able to waive any conflicts, did LCDR Lynch effectively waive his right to a conflict-free defense counsel in this case? Answer: Yes.

(A) I was assured by LCDR Tagg that LCDR Lynch was advised of the potential conflicts.

(B) LCDR Lynch had the option to request that a different, conflict-free law specialist be detailed to represent him. While he requested an individual military counsel by name, LCDR Lynch did not request a new, detailed counsel, although he knew he had the right to do so. (The availability of the individual military counsel is a separate issue that was raised at trial, and may be raised in the Defense's RCM 1105 response. It should not be confused with this issue).

(C) The Military Judge, specifically inquired into the situation during the Article 39(a) [, UCMJ, 10 USC § 839(a),] session. He asked LCDR Lynch to make an election. His silence, in the face of a clear understanding that his silence would be considered an election to retain his currently detailed counsel, was an effective waiver of conflict-free counsel.

(Emphasis added.)

On January 17, 1991, LCDR Michael Tagg, detailed defense counsel, submitted legal issues to be considered by the convening authority prior to his action in this case. RCM 1105. His submission stated:

Subj: MATTERS SUBMITTED BY THE ACCUSED PURSUANT TO RCM 1105 IN THE GCM CASE *US V. LYNCH*

[4]a. LCDR Lynch has retained civilian counsel to appeal one particular issue to the Coast Guard Court of Military Review and the United States Court of Military Appeals. That issue is now before the Court of Military Appeals, but as detailed defense counsel it is my duty to independently raise the issue of conflict of interest for your consideration. By raising the conflict issue in this forum I am not duplicating the appeal, since your authority is greater than that of the Court of Military Appeals.

b. CAPT Kevin Barry, USCG (ret.), the retained appellate counsel, has asked the Court of Military Appeals to accept an extraordinary writ to hear the issue of conflict of interest between the Staff Judge Advocate and the detailed defense counsel. If granted the issue would be heard by the Court out of the normal appellate order. In his motion, CAPT Barry alleges that because I, as the detailed defense counsel, serve under CAPT Reining, the SJA, my actions may have been and may continue to be influenced by a greater concern for my career than for the fate of my client. While I do not believe that my actions were or will be so influenced, I must agree with CAPT Barry that I am not the best judge of that question. LCDR Lynch was concerned with the apparent conflict from

the beginning and the issue was raised both before and again at trial. In the legal community, conflicts of interest are very serious matters, even more so in criminal actions. The client, in this case LCDR Lynch, must have complete confidence that his counsel will put the client's interests above all else. This confidence is central to a viable criminal justice system, and in this case it was lacking.

c. *As an example of the conflict, my recollection of the events following my assignment as detailed defense counsel do not fully comport with those set forth [in] the RCM 1106 recommendation submitted to you by the SJA.* No subordinate wishes to officially state that his superior's recollection is wrong; it takes a highly professional person not to take offense at such an allegation, but I am forced to do so out of my duty to my client. *I do not agree with CAPT Reining's statement in paragraph 6.a(4) at page 4. While CAPT Reining and I did discuss the apparent conflict of interest, this was after the Formal Board had closed and after an attorney-client relations[hip] had been established. Once charges were preferred and the Article 32 [, UCMJ, 10 USC § 832] investigation ordered, I spoke with LCDR Lynch about the apparent conflict and at that time LCDR Lynch requested that an Individual Military counsel be made available. The requested IMC was denied by CAPT Reining, even though the requested officer was willing and able to serve.* Because I knew more about the facts of the case than any other law specialist, *LCDR Lynch had no option then but to keep me as his detailed defense counsel and to hire civilian counsel to guarantee that his interests would be fully protected.*

d. The Coast Guard is the only service which tolerates the relationship which exists between the detailed defense counsel and the Staff Judge Advocate. As the American Bar Association stated in its Informal Opinion 1474, no lawyer "should ever voluntarily represent a client if the lawyer has to oppose an officer who prepares efficiency reports of the lawyer or otherwise has command authority over the

lawyer." Clearly CAPT Reining, who directs the prosecution in this case, has command authority of me, a member of his state [sic]. Out of tradition and lethargy the Coast Guard tolerates a situation which is condemned by some of the best minds in the legal field.

e. I request that you correct this major error by setting aside the guilty finding and dismissing the charge and specification. The error was not of your doing, it is endemic to the Coast Guard legal system, but you are in the best position to compel the actions necessary to correct the problem.

(Emphasis added.)

On that same date, Kevin J. Barry, appellant's civilian defense counsel, submitted a "Statement of Legal Errors and Petition for Clemency" to the Convening Authority. He stated:

### STAFF JUDGE ADVOCATE DISQUALIFICATION

It is clear from the 1106 Rec. that Captain Reining considered it necessary to review and attempt to defend his own pretrial actions in this case. The extent of his involvement in the case which is revealed in that document (but which was previously not clear to Lieutenant Commander Lynch) now makes it evident that he should not serve as staff judge advocate for this case. Captain Reining seems to find it unthinkable that he not continue to serve as SJA. It is obvious that for him the sacrosanct relationship is not the attorney-client relationship, but rather the convening authority-SJA relationship. His discussion at para. 6.b.(5) and (6) of the 1106 Rec. would seem to indicate that some extraordinary action would be required to obtain a new staff judge advocate for this case. This is simply not true. The President, in RCM 1106, clearly contemplated

that a substitute staff judge advocate may be required in a given case, and provided procedures to accomplish that. Indeed, in this case Captain Reining should have recused himself on his own motion. He squarely falls into the category of persons who are disqualified to produce the RCM 1106 Recommendation, since he has been required to "review [his] own pretrial action (such as the pretrial advice under Article 34; *see* RCM 406) when the sufficiency or correctness of the earlier action has been placed in issue." Discussion, RCM 1106(b). In this case the sufficiency of the Article 34 advice was questioned by motion prior to trial; *more importantly, all of Captain Reining's actions relative to assignment of counsel have been questioned, and have necessitated his vigorous defense of those actions in his RCM 1106 Recommendation. Captain Reining should have recused himself from serving as SJA.* Since he did not, Lieutenant Commander Lynch now requests that you appoint a new SJA and require that that officer prepare a new RCM 1106 Recommendation prior to taking action on the record.

(Emphasis added.)

As noted above, the convening authority approved the findings of guilty and the sentence on February 13, 1991.

— — —

Article 6(c), UCMJ, 10 USC § 806(c), states:

No person who has acted as member, military judge, trial counsel, assistant trial counsel, defense counsel, assistant defense counsel, or investigating officer in any case may later act as a staff judge advocate or legal officer to any reviewing authority upon the same case.

*See* RCM 1106(a) and (b).[2] This Court has broadly applied this statute in light of its

---

2. **Rule 1106. Recommendation of the staff judge advocate or legal officer**
(a) In general. Before the convening authority takes action under RCM 1107 on a record of trial by general court-martial or a record of trial by special court-martial which includes a sentence to a bad-conduct discharge, that convening authority's staff judge advocate or legal

officer shall, except as provided in subsection (c) of this rule, forward to the convening authority a recommendation under this rule.
(b) Disqualification. No person who has acted as member, military judge, trial counsel, assistant trial counsel, defense counsel, associate or assistant defense counsel, or investigating officer in any case may later act as a staff judge

well-established purpose "to assure the accused a thoroughly fair and impartial review." *See United States v. Crunk*, 4 USCMA 290, 293, 15 CMR 290, 293 (1954). Thus, we have held that it also applies to "[o]ther conduct by a staff judge advocate [that] may be so antithetical to the integrity of the military justice system as to disqualify him from participation" in the post-trial review [now recommendation]. *United States v. Engle*, 1 MJ 387, 389 (CMA 1976); *see* RCM 1106(b), Discussion.[3]

▪ Of course, even under this body of law, mere preparation of the pretrial advice, RCM 406, is not enough to disqualify the staff judge advocate from preparation of the post-trial recommendation. *See United States v. Engle*, supra at 389. Moreover, "[i]n *United States v. Collins*, 6 MJ 256, 257 (CMA 1979), this Court held that a staff judge advocate is not disqualified from preparing a post-trial review [now recommendation] because he also prepared the pretrial advice, if his pretrial advice was proper in all material respects." *United States v. Caritativo*, 37 MJ 175, 183 (CMA 1993). Nevertheless, where a legitimate factual controversy exists between the staff judge advocate and the defense counsel, the staff judge advocate must disqualify himself from participating in the post-trial recommendation. *Id.*

▪ Appellant's case is similar to *United States v. Engle*, supra. There "defense counsel moved for a new [pretrial] advice on the ground that the one in which the convening authority had referred the charges to trial contained a material misstatement of the evidence and omitted mention of other matters that could have affected the judgment of the convening authority." *Id.* at 388. We held that the staff judge advocate who prepared the challenged pretrial advice was disqualified from preparing the post-trial review [now recommendation]. Here, the staff judge advocate in his post-trial recommendation made factual representations concerning his own conduct and that of detailed defense counsel with respect to a purported pretrial waiver of conflict-free counsel by appellant. Detailed defense counsel in his own post-trial submission disputed the accuracy of these factual representations, and civilian counsel requested that the staff judge advocate disqualify himself from the post-trial recommendation on this basis. More so than in *United States v. Engle, supra*, we hold that a material factual dispute existed which required the convening authority to seek a post-trial recommendation from an uninvolved judge advocate.

Turning to the remaining issues in this case, we note that Issue VI is resolved against appellant on the basis of the Supreme Court decision in *Weiss v. United States*, ⸺ U.S. ⸺, 114 S.Ct. 752, 127 L.Ed.2d 1 (1994). Moreover, Issue II is resolved against appellant on the basis of this Court's decision in *United States v. Carpenter*, 37 MJ 291, 296 (1993). Issues I and IV, however, cannot be decided until a proper post-trial recommendation has been presented to the convening authority; a new convening authority action has been taken; and further review has been conducted by the Court of Military Review. Finally, in view of the importance of Issue V in terms of the integrity of the military justice system, we elect not to decide this question until appropriate review has been completed below.

The decision of the United States Coast Guard Court of Military Review and the action of the convening authority are set aside. The record of trial is returned to the General Counsel of the Department of Transportation for submission to the convening authority for a new recommendation by a qualified staff judge advocate and a new ac-

---

advocate or legal officer to any reviewing or convening authority in the same case.

**3.** **DISCUSSION**

The staff judge advocate or legal officer may also be ineligible when, for example, the staff judge advocate or legal officer: served as the defense counsel in a companion case; testified as to a contested matter (unless the testimony is clearly uncontroverted); has other than an official interest in the same case; or must review that officer's own pretrial action (such as the pretrial advice under Article 34; *see* RCM 406) when the sufficiency or correctness of the earlier action has been placed in issue.

tion. Thereafter, Article 66, Uniform Code of Military Justice, 10 USC § 866, will apply.

Judges COX, CRAWFORD, GIERKE, and WISS concur.